[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above-entitled cases were consolidated and tried as a single case before this Court on various dates. The findings of fact apply to all three cases. After an extended trial, the Court finds the following facts as
At approximately the middle of 1981, Henry R. Edelberg thereinafter referred to as "Edelberg"), Raymond Crosby (hereinafter referred to as "Crosby") and Murray M. Sonstein (hereinafter referred to as "Sonstein") had decided to form a business venture.
(1) By way of background, Edelberg had been CT Page 6298 involved in trucking and the sale and repair of trucks for some time. Crosby had been a truck mechanic for a number of years and had worked for Edelberg at another entity. Murray Sonstein was experienced in tractor trailer sales and had a number of contacts in that particular field of business.
(2) On November 19, 1981, Edelberg and Murray M. Sonstein formed a corporation known as Nedmarc, Inc. for the sale and leasing of trailers. On the same date, Crosby, Edelberg and Murray Sonstein formed H.R.M. Mobile Services, Inc. (hereinafter referred to as "H.R.M."), a repair and parts corporation.
(3) Nedmarc would do repairs on fleets of trucks and trailers for various other businesses and corporations and would, on occasion, buy, repair, refinish and resell trucks and particularly trailers.
(4) H.R.M. would do the work and bill Nedmarc for the mechanic's work, repair, refinishing, etc. Nedmarc would then bill the outside customer. Crosby was the president of H.R.M. and in charge of the operations and had agreed with Edelberg and Sonstein that H.R.M. would charge Nedmarc for repair work at the rate of $20 an hour instead of the usual rate of $28 per hour which they charged to outside customers. H.R.M. would also furnish and sell parts to Nedmarc at cost instead of cost plus 40 percent, which they normally charged to outside customers. This arrangement was very advantageous to Nedmarc in that it obtained work, service and parts for them at a discounted price. It was also advantageous to H.R.M. in that it was a large and steady customer with continuing business.
On May 3, 1982, Crosby, Edelberg and Murray Sonstein purchased the property at 367 Lebanon Avenue, Colchester, Connecticut, for $70,000. This property was paid for with the purchase money mortgage of $60,000 to the bank and each of the three partners paid one-third of the balance of the purchase price. Title was taken in their individual names and each of the three owned an undivided one-third interest in the property. The property was operated under the name H.R.M. Realty and will be referred to later in this decision by that name.
Edelberg and Sonstein had a falling out and CT Page 6299 Edelberg eventually, after months of negotiations, in 1984, purchased all of Murray Sonstein's right, title and interest in and to the two corporations known as Nedmarc, Inc. and H.R.M. Mobile Sales, Inc. and Sonstein's undivided one-third interest in the real estate at Lebanon Avenue, Colchester. These dealings were directly between Edelberg and Sonstein and did not involve Crosby, and there were no promises or efforts made or discussions held with Crosby regarding his purchasing a portion of Sonstein's one-third interest.
When the venture was first formed, Crosby owned tools worth approximately $25,000 to $30,000. After the sale in 1984, Sonstein had no connection with the business and is not involved in any of these three lawsuits. From the beginning of H.R.M. until 1983, Crosby wrote almost all of the checks in connection with that business. Edelberg's wife, Rosalyn Edelberg, wrote most of the checks from 1983 to 1984, and thereafter a bookkeeper by the name of Charlotte Locke wrote almost all of the checks in connection with the business of H.R.M. According to the books, H.R.M. had a steadily declining income and became indebted to Nedmarc and a discussion was held between Edelberg and Crosby as to whether they should bankrupt H.R.M. or merge it into Nedmarc so that Nedmarc could take advantage of certain operating losses that had been incurred by H.R.M.
It was decided in 1986 to merge H.R.M. Mobile Sales, Inc. into Nedmarc, Inc. All of the stock and the sole remaining stockholder of Nedmarc was to be Henry Edelberg. Raymond Crosby was fully aware that he would not own any part or portion of Nedmarc, Inc. and that his only asset would be his undivided one-third interest in the real estate.
When the real estate was first purchased, leases were entered into under which Nedmarc would pay $1,500 per month rent to H.R.M. Realty and H.R.M. Mobile Sales and Service, Inc. would pay $1,500 per month rent to H.R.M. Realty. On April 1, 1986, Edelberg and his wife executed a ten-year lease from H.R.M. Realty to Nedmarc, Inc. under the terms of which Nedmarc, Inc. would pay a rental of $1,500 per month on a triple net lease. Based on the testimony of the appraiser, Mr. Betts, this rental was far below market value and constituted a substantial benefit to Mr. Edelberg and his corporation. Mr. Crosby was unaware of this arrangement and did not agree to or consent to it nor did he have anything to CT Page 6300 do with the negotiation of the new lease.
Crosby's father worked for H.R.M. and did some work on his own personal vehicles and was fired by Mr. Edelberg. During this period, Nedmarc was paying the employees of H.R.M. This occurred in approximately March 1987, and as a result of this firing, Raymond Crosby voluntarily left the business and the venture. At the time that he left, he took with him his tools, both those which he had brought into the venture originally in 1981 and most of the tools that had been acquired during the approximately five-and-a-half year period that H.R.M. and Nedmarc operated. When he left, Crosby took with him a number of the records of Nedmarc, Inc. and they disclosed that some of the invoices were heavily discounted in order to get down to a figure of approximately $3,000 which was a figure that Nedmarc had given H.R.M. as the maximum cost they could incur in rebuilding and refurbishing certain trailers belonging to Oak Island Express. In addition, it was discovered and submitted into evidence that a number of the invoices had the name H.R.M. changed to Nedmarc, Inc. This means, of course, that in actual fact, Nedmarc, Inc. was billing and collecting monies for services rendered by H.R.M. This would, of course, make it impossible for H.R.M. to continue on in business. For example, in the fiscal year October 1, 1984 to October 1, 1985, the total work orders from Nedmarc, Inc. to H.R.M. was $125,654. However, during that same fiscal year, Nedmarc had deposits of $190,183. This represented a profit to Nedmarc of $64,529, during a period when H.R.M. was showing operating losses. Any and all profits generated by Nedmarc belonged solely to Edelberg and any and all profits generated by H.R.M. after 1984 belonged two-thirds to Edelberg and one-third to Crosby.
A great many exhibits were introduced along with oral evidence to show that both parties, Edelberg and Crosby, had taken various actions that benefitted [benefited] them and were not quite proper and did not accord with appropriate accounting procedures. It is impossible for this Court to ascertain an exact amount on the part of either party and which party gained the greater advantage. Although this Court finds that overall through the period of time that the parties were in business, the lower labor cost and obtaining the parts at cost represented a considerable benefit to Nedmarc which outweighed by far the amount of work that Nedmarc was giving CT Page 6301 to H.R.M. in such bills as they may have paid on behalf of H.R.M.
On or about March 27, 1986, Crosby and Edelberg refinanced through the Connecticut National Bank and a second mortgage the property at Lebanon Avenue. They received new or fresh money proceeds in the amount of $68,748.97. This was deposited into the H.R.M. Realty checking account, but two checks were immediately drawn payable to Nedmarc, Inc., one being check number 191 for $30,000 and the other being check number 193 for $38,748.97.
At the time Edelberg told Crosby that the $68,748.97 was a loan to Nedmarc, Inc. and that it would be paid back to H.R.M. Realty. No portion of that sum was ever repaid to H.R.M. Realty.
Some time in 1991, the Department of Environmental Protection was alerted to the fact that there was a toxic waste problem on the property of H.R.M. Realty. They immediately investigated, performed a study and expended $213,000 toward clean up of the toxic waste problem. They have filed a lien for the $213,000 or will be doing so in the near future.
Both parties, Edelberg and Crosby, were aware of the manner in which toxic waste was being handled, but since Crosby left in 1987, he did not have any control over the manner in which toxic waste was disposed, and from the evidence and testimony, the Court concludes that the actual incident or incidents that brought the DEP into the picture were caused by actions of Mr. Edelberg acting through his agents, servants and employees.
In addition to the DEP, the federal government brought criminal charges against Mr. Edelberg and he was found guilty of violating environmental protection acts of the federal government, and at the time of the trial, was serving house arrest.
For the fiscal year ending August 31, 1984, the tax return for H.R.M. showed a year-end inventory of $92,000. For the fiscal year ending August 31, 1985, the tax return showed an ending inventory of zero. On Nedmarc's 1985 tax return, they show a transfer of $67,000 in parts inventory. CT Page 6302 This is a difference, of course, of $25,000. Both parties have raised a number of issues which this Court will attempt to answer. Edelberg did not have a fiduciary relationship with Crosby as managing partner of H.R.M. Realty or as majority stockholder of H.R.M. Mobile Services, Inc. They were, in fact, businessmen involved in a joint venture together. Edelberg therefore could not have violated his fiduciary relationship by withholding information since he was under no duty to provide the information. In any event, the information was available to Crosby at any time that he desired. While Edelberg did not wrongfully appropriate assets of H.R.M. Realty partnership, his corporation, Nedmarc, Inc., does, in fact, owe H.R.M. Realty $68,748. Edelberg did not violate any fiduciary relationships since he had none and did not, in fact, withhold H.R.M. Mobile Services, Inc. information to which Crosby was entitled.
Edelberg did indirectly and wrongfully appropriate H.R.M. Mobile Services, Inc. assets by virtue of invoicing and billing customers on a Nedmarc invoice for work performed by H.R.M. Edelberg's actions did not constitute unfair and deceptive practices, and in this Court's opinion, it was a business relationship and not subject to CUTPA. Finding no CUTPA violation nor violation of his fiduciary obligations, Edelberg is not required to pay attorney's fees.
With regard to the claims of Edelberg, the Court does not find that Crosby mismanaged the business or stole the parts from the business.
As stated earlier in this decision, Crosby came into the venture with approximately $25,000 to $30,000 in tools, and certainly there was no evidence or testimony that those tools would become the property and equipment and be owned by H.R.M. Mobile Services, Inc. The amount of tools he removed or took from the premises did not substantially exceed the amount he brought when he entered the venture. Edelberg's claim about using the facilities for repair of automobiles by Crosby's father and charging certain parts to Nedmarc is counterbalanced by testimony that work was performed on Edelberg's personal automobiles and no invoices or charges were ever made.
In docket number CV88-090875, and docket number CV88-089823, judgment may enter jointly and severally against CT Page 6303 Nedmarc, Inc. and Henry R. Edelberg in the amount of $235,582. This represents the $213,000 clean up expense lien that has been or will be filed against the property together with one-third of the $67,748 which Nedmarc, Inc. received from the proceeds of the second mortgage.
In docket number CV88-0900828, the court finds the issues in favor of the defendant Raymond Crosby.
R. T. O'Connell, J.